# United States Court of Appeals for the Federal Circuit

---

**PREZELL GOODMAN,**
*Claimant-Appellant*

v.

**DAVID J. SHULKIN, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2016-2142

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 14-4329, Judge Bruce E. Kasold.

---

Decided: September 18, 2017

---

ZACHARY STOLZ, Chisholm Chisholm & Kilpatrick, Providence, RI, argued for claimant-appellant. Also represented by JENNA ZELLMER, ROBERT VINCENT CHISHOLM, MEGAN MARIE ELLIS; BARBARA J. COOK, Barbara J. Cook, Attorney at Law, Cincinnati, OH.

WILLIAM JAMES GRIMALDI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., MARTIN F. HOCKEY, JR.; CHRISTOPHER O. ADELOYE, BRIAN D. GRIFFIN, Office of General Counsel,

United States Department of Veterans Affairs, Washington, DC.

_____

Before WALLACH, CHEN, and STOLL, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Appellant Prezell Goodman appeals from a judgment of the U.S. Court of Appeals for Veterans Claims ("Veterans Court") that affirmed the Board of Veterans' Appeals' ("Board") denial of service-connected benefits for rheumatoid arthritis to include as due to a medically unexplained chronic multi-symptom illness ("MUCMI") under 38 C.F.R. § 3.317 (2015). *Goodman v. McDonald*, No. 14-4329, 2016 WL 852866, at *1 (Vet. App. Mar. 4, 2016). We affirm.

## BACKGROUND

Mr. Goodman served in the U.S. Army from 1972 to 1992, which included service in Southwest Asia during the Persian Gulf War. J.A. 14–19, 107. During his service and at his discharge from the Army, Mr. Goodman underwent medical examinations that returned negative for rheumatoid arthritis. J.A. 161, 164–65. In fact, during a service separation examination, he denied having any pain in his joints or arthritis. J.A. 162.

In 2007, Mr. Goodman sought treatment at a Department of Veterans Affairs ("VA") medical center for hand stiffness and bilateral knee pain; the latter he said had begun during service "since [the age of] 21 [years old]." J.A. 22. Mr. Goodman filed a claim for VA benefits for rheumatoid arthritis four months after this medical examination. J.A. 30–31. The regional office and the Board denied Mr. Goodman's claim that this injury was caused or further aggravated by his service in Southwest Asia. J.A. 37–40, 64–70.

Mr. Goodman appealed the Board's decision to the Veterans Court. J.A. 74. Following this appeal, both parties entered a joint motion for remand, in which they agreed that "[the Board's] statement of reasons or bases [was] inadequate" because it failed "to apply the provisions of 38 C.F.R. § 3.317[] to [Mr. Goodman's] claim for entitlement to VA benefits based on service connection for rheumatoid arthritis." J.A. 76. Specifically, the parties agreed that the Board failed to consider whether Mr. Goodman's rheumatoid arthritis may be entitled to a presumptive service connection as a MUCMI under § 3.317.[1] J.A. 77–79. The parties also agreed that "it is solely a medical determination as to whether [Mr. Goodman's] illness qualifies . . . as a '[MUCMI].'" J.A. 78 (citation omitted).

On remand, the Board sought an independent medical advisory opinion from the Veterans Health Administration, *see* J.A. 107, which was conducted by a VA medical center Director of Rheumatology in 2014 ("2014 Medical Opinion"), J.A. 90–95. The 2014 Medical Opinion first stated that "it is less likely than not" that Mr. Goodman's rheumatoid arthritis can be characterized as a MUCMI within the meaning of § 3.317. J.A. 90 ("[R]heumatoid arthritis has at least partially explained and widely accepted concepts in regards to etiology and pathogenesis that are well documented and established in the literature."). Second, the 2014 Medical Opinion stated that it "is less likely than not that [Mr. Goodman's] rheumatoid arthritis is related to a specific exposure event experi-

---

[1]    Section 3.317(a)(2)(ii) defines a MUCMI as "a diagnosed illness without conclusive pathophysiology or etiology" and further states that "[c]hronic multisymptom illnesses of partially understood etiology and pathophysiology, such as diabetes and multiple sclerosis, will not be considered medically unexplained."

enced by [Mr. Goodman] during service, including in Southwest Asia." J.A. 91. As support for this second finding, the 2014 Medical Opinion noted Mr. Goodman's medical records, including his prior negative tests for rheumatoid arthritis and denial of arthritis and joint pain upon retirement. J.A. 91. The 2014 Medical Opinion further noted that the onset of Mr. Goodman's arthritis "manifested historically and objectively long after" his service and his "rheumatoid arthritis was diagnosed [fifteen] years following discharge from active service." J.A. 91.

Based on the 2014 Medical Opinion, the Board again denied Mr. Goodman's claim for failure to satisfy the requirements of § 3.317. J.A. 126. The Board found the 2014 Medical Opinion to be "highly probative and persuasive," prepared by "a medical expert in the field of rheumatology," and the "only competent medical evidence [on record] as to the question [at hand]." J.A. 116. The Board relied upon the 2014 Medical Opinion in finding that "rheumatoid arthritis[, as] a chronic multi-symptom illness . . . of partially understood etiology and pathophysiology[,] will not be considered medically unexplained," such that Mr. Goodman was not entitled to a presumptive service connection for a MUCMI. J.A. 116 (citation omitted).

Mr. Goodman appealed the Board's decision to the Veterans Court, alleging in part that the Board erred in not granting him presumptive service-connection under § 3.317(a)(2)(ii) because the 2014 Medical Opinion "could not pinpoint a specific etiology or pathophysiology for Mr. Goodman's [illness]." J.A. 2. The Veterans Court found that the Board had not erred in its interpretation of § 3.317. *Goodman*, 2016 WL 852866, at *2. The Veterans Court further held that the Board "assigned [the 2014 Medical Opinion] significant weight and . . . its assignment of weight is plausible and not clearly erroneous." *Id.* The court went on to clarify that "[b]y using the

phrase 'such as' when citing diabetes and multiple sclerosis as diseases that are not MUCMIs, [§ 3.317] left it to medical experts to identify which diseases . . . have at least a partially explained etiology and pathophysiology." *Id.* Mr. Goodman appeals.

## DISCUSSION

### I. Standard of Review

When reviewing appeals from the Veterans Court, this court's jurisdiction is limited by statute. We may "review and decide any challenge to the validity of any statute or regulation or any interpretation thereof . . . and . . . interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c) (2012). Except to the extent that a constitutional issue is presented, this court may not review "a challenge to a factual determination," or "a challenge to a law or regulation as applied to the facts of a particular case." *Id.* § 7292(d)(2)(A)–(B).

Legal determinations of the Veterans Court are reviewed de novo. *See Cushman v. Shinseki*, 576 F.3d 1290, 1296 (Fed. Cir. 2009). Because Mr. Goodman challenges, in part, the Veterans Court's interpretation of 38 U.S.C. § 1117 as implemented by 38 C.F.R. § 3.317, we have jurisdiction to review pursuant to 38 U.S.C. § 7292(c).

### II. The Veterans Court Properly Determined That the Board Was Permitted to Rely upon the 2014 Medical Opinion

Mr. Goodman asserts that the Veterans Court erred in affirming the Board's reliance upon the 2014 Medical Opinion he alleges failed to assess properly his rheumatoid arthritis. *See* Appellant's Br. 13–14. The record does not support Mr. Goodman's argument.

While on remand from a previous appeal, the VA was authorized to provide to the Board an independent advi-

sory opinion from a medical expert in the field of rheumatoid arthritis, the 2014 Medical Opinion, which evaluated whether Mr. Goodman's rheumatoid arthritis could qualify as a MUCMI.  *See* 38 C.F.R. § 4.10; *see also* J.A. 90–91. The Board was authorized to review the 2014 Medical Opinion and weigh it against the other evidence of record. *See* 38 C.F.R. § 4.2; *see also* J.A. 113–16.  Finally, the Veterans Court was authorized to review the Board's factual findings to determine whether they were plausible and not clearly erroneous.  *See* J.A. 2–5.  To the extent Mr. Goodman challenges the findings in the 2014 Medical Opinion or the high probative value that the Board assigned it in denying Mr. Goodman presumptive service-connection for a MUCMI under § 3.317, these are factual challenges that we are not permitted to review on appeal. *See* 38 U.S.C. § 7292(d)(2)(A)–(B); *Prinkey v. Shinseki*, 735 F.3d 1375, 1383 (Fed. Cir. 2013) ("[T]he sufficiency of a medical opinion is a matter beyond our jurisdictional reach, because the underlying question is one of fact.").

### III. The Veterans Court Properly Interpreted 38 C.F.R. § 3.317(a)(2)(ii)

Mr. Goodman's principal argument on appeal concerns *who* has the power to diagnose illnesses that may qualify as a MUCMI.  Specifically, he avers that the Veterans Court's decision misinterpreted the legal rule articulated in § 3.317 by "expand[ing] the authority of the medical expert beyond the facts of an individual case and improperly delegat[ing] authority for determining a qualifying disease to an individual physician."  Appellant's Br. 12; *see id.* at 9–12.  That is so, he contends, because a medical expert in an individual case cannot establish a general and precedential rule precluding rheumatoid arthritis from qualifying as a MUCMI.  *Id.* at 14.  We disagree with Mr. Goodman's characterization of the Veterans Court's interpretation of § 3.317.

The Supreme Court has held that an agency's interpretation of its own regulations is entitled to substantial deference by the courts. *Auer v. Robbins,* 519 U.S. 452, 461–62 (1997). It is well established that "[t]he rules of statutory construction apply when interpreting an agency regulation." *Roberto v. Dep't of Navy*, 440 F.3d 1341, 1350 (Fed. Cir. 2006) (citation omitted). When construing a regulation, it is appropriate first to examine the regulatory language itself to determine its plain meaning. *Meeks v. West*, 216 F.3d 1363, 1366 (Fed. Cir. 2000). If the regulatory language is clear and unambiguous, the inquiry ends with the plain meaning. *Id.*

The VA promulgated § 3.317 as an implementing regulation for 38 U.S.C. § 1117. Section 1117 provides that a Persian Gulf Veteran is entitled to compensation on a presumptive basis if the Veteran exhibits objective indications of a "qualifying chronic disability" that manifests "during service on active duty in the Armed Forces in the Southwest Asia theater of operations during the Persian Gulf War" or that manifests to a degree of ten percent or more as prescribed by regulation. 38 U.S.C. § 1117(a)–(b). The current regulation requires, inter alia, that the "qualifying chronic disability" manifest to a degree of ten percent or more by December 31, 2021, and that it, "[b]y history, physical examination, and laboratory tests cannot be attributed to any known clinical diagnosis." 38 C.F.R. § 3.317. By statute, a "qualifying chronic disability" may be one that results from: "[a]n undiagnosed illness" or "[a MUCMI] (such as chronic fatigue syndrome, fibromyalgia, and irritable bowel syndrome) that is defined by a cluster of signs or symptoms." 38 U.S.C. § 1117(a)(2).

Section 3.317 provides a substantially similar definition of the term "qualifying chronic disability." *See* 38 C.F.R. § 3.317(a)(2). The current version of § 3.317 specifies what does (and provides examples of what does not) constitute a MUCMI:

> For purposes of this section, the term [MUCMI] means a diagnosed illness without conclusive pathophysiology or etiology, that is characterized by overlapping symptoms and signs and has features such as fatigue, pain, disability out of proportion to physical findings, and inconsistent demonstration of laboratory abnormalities. Chronic multisymptom illnesses of partially understood etiology and pathophysiology, such as diabetes and multiple sclerosis, will not be considered medically unexplained.

*Id.* § 3.317(a)(2)(ii).

We do not read § 3.317 to prohibit medical professionals from professing whether certain medical diseases may constitute a MUCMI. Because neither § 1117 nor § 3.317 on their face state who has the power to diagnose illnesses that may qualify as a MUCMI, we review the statutory and regulatory history to interpret § 3.317. *See Meeks*, 216 F.3d at 1367 (explaining that we "look to the provisions of the whole law, and to its object and policy" (quoting *Massachusetts v. Morash*, 490 U.S. 107, 115 (1989)). In October 2010, the VA published guidance on § 3.317 to expressly allow for medical professionals to "render medical opinions" to be utilized by VA adjudicators when assessing MUCMI determinations on a case-by-case basis. *See* Compensation for Certain Disabilities Due to Undiagnosed Illnesses, 75 Fed. Reg. 61,995, 61,995 (Oct. 7, 2010) ("October 2010 Amendment"). The October 2010 Amendment provides examples of conditions that do not constitute a MUCMI and gives further guidance "to enable medical professionals to render medical opinions on [a MUCMI]" and "enable VA adjudicators to decide [a MUCMI determination] when it arises in individual cases." *Id.* The October 2010 Amendment also grants VA adjudicators "the authority to determine on a case-by-case basis whether additional diseases meet the criteria of paragraph (a)(2)(ii) in the *same manner* as they make

other determinations necessary in deciding claims." *Id.* at 61,996 (emphasis added). The October 2010 Amendment thus gives VA adjudicators the same authority over MUCMI determinations as other claim determinations, *id.*, such that the VA adjudicator ultimately may "interpret[] medical reports [provided by medical examiners] in order to match the rating with the disability," *Moore v. Nicholson*, 21 Vet. App. 211, 218 (2007), *rev'd on other grounds sub nom. Moore v. Shinseki*, 555 F.3d 1369 (Fed. Cir. 2009); *see id.* (citing 38 C.F.R. §§ 4.2 and 4.10); 38 C.F.R. § 4.2 ("It is the responsibility of the rating specialist to interpret reports of examination in the light of the whole recorded history . . . . Each disability must be considered from the point of view of the veteran working or seeking work."); *id.* § 4.10 ("The basis of disability evaluations is the ability of the body as a whole . . . [and] imposes upon the medical examiner the responsibility of furnishing, in addition to the etiological [and other] data required for ordinary medical classification, full description of the effects of disability upon the person's ordinary activity."). Therefore, we hold that VA adjudicators may rely on a medical examiner's evaluation of whether a veteran's condition qualifies as a MUCMI pursuant to § 3.317(a)(2)(ii).

Although Mr. Goodman contends that the Veterans Court improperly relied upon the 2014 Medical Opinion as a "precedent-setting action" for all future rheumatoid arthritis cases, Appellant's Br. 11, this characterization is inaccurate. As an initial matter, the VA's regulations clearly state that "Board decisions will be considered binding only with regard to the specific case decided," 38 C.F.R. § 20.1303, and the 2014 Medical Opinion expressly limits the medical expert's MUCMI recommendation to only Mr. Goodman's case of rheumatoid arthritis, *see* J.A. 90 ("It is my opinion that it is less likely than not that [Mr. Goodman]'s rheumatoid arthritis can be characterized as a . . . [MUCMI] . . . ."). Further, the parties agree

that a Board opinion does not bind the Board in subsequent cases. *See* Appellant's Br. 11; Appellee's Br. 22. Mr. Goodman has offered no evidence of a subsequent Board decision denying another claimant MUCMI compensation by referencing either the Board decision or referencing the 2014 Medical Opinion issued in Mr. Goodman's case. *See generally* Appellant's Br. We hold that, in individual MUCMI determinations, the VA adjudicator may consider evidence of medical expert opinions and all other facts of record to make the final determination of whether a claimant has proven, based on the claimant's unique symptoms, the existence of a MUCMI. *See* October 2010 Amendment, 75 Fed. Reg. at 61,995–96. That is what the VA did here, and the Board and Veterans Court appropriately reviewed such findings under the correct interpretation of § 3.317(a)(2)(ii).

Moreover, we find nothing that precludes a previously-denied, or future, rheumatoid arthritis claimant from seeking the presumptive service connection afforded pursuant to § 3.317. In the case of a previously-denied claimant, should "new and material evidence" come to light discrediting previous theories as to the etiology or pathophysiology of rheumatoid arthritis, the claimant is not without recourse to reopen their previously-disallowed claim for review. *See* 38 U.S.C. § 5108 ("If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim."); 38 C.F.R. § 3.156(a) ("A claimant may reopen a finally adjudicated claim by submitting new and material evidence.").[2] Likewise, a future claimant will have an

---

[2] Section 5108 has been amended by the Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115-55, 131 Stat. 1105 (Aug. 23, 2017). However, since the effective date for the amendment is set as

opportunity, just as Mr. Goodman had in the present appeal, to offer evidence relating to the totality of his medical condition and seek a medical opinion relying on the most up-to-date medical studies.

## CONCLUSION

We have considered Mr. Goodman's remaining arguments and find them unpersuasive. For the foregoing reasons, the judgment of the U.S. Court of Appeals for Veterans Claims is

## **AFFIRMED**

### COSTS

No costs.

---

the later of 540 days after enactment (February 14, 2019) or 30 days after the Secretary certifies that the VA is ready and able to handle appeals under the new system, *id.* at 1115, we must analyze § 5108 under the 2012 statute version that is still in effect.